LOUISE HUDSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hudson v. Commissioner
Docket No. 8858-78.
United States Tax Court
T.C. Memo 1981-175; 1981 Tax Ct. Memo LEXIS 567; 41 T.C.M. (CCH) 1253; T.C.M. (RIA) 81175; April 13, 1981. Louise Hudson, pro se. Bryan Sullivan, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax in the amount of $ 506 for the taxable year 1976. The issues *568 are (1) whether petitioner is entitled to a rental loss deduction under section 162[1] and section 212 where the rental property had been vacant for over two years and (2) whether petitioner is entitled to a casualty loss deduction under section 165(c)(3) in excess of the amount allowed by respondent. FINDINGS OF FACT Petitioner timely filed her Federal income tax return for the taxable year 1976 with the Internal Revenue Service at the Kansas City Service Center, Kansas City, Missouri. At the time she filed her petition in this case, she resided in Chicago, Illinois. During the year 1976, petitioner was a married person, legally separated from her husband. She and her two children lived in the upstairs apartment of a house she owned, located at 321 West 59th Place, Chicago, Illinois. Petitioner had purchased that house in 1953 at a cost of $ 15,500. It was a two-story frame house, with one apartment on the first floor, a second apartment on the second floor, a basement and a two-car garage. At *569 the time she purchased the house, the first-floor apartment was rented to tenants, and petitioner moved into the apartment on the second floor which she has continuously occupied since 1953. The downstairs apartment has been rented to tenants at various times over the years, but was vacant from at least September of 1974 through January of 1980. The last tenants moved out in September of 1974, and petitioner had the apartment repaired and ready for occupancy by October of 1974. However, she had trouble finding what she considered to be "decent tenants" or "desirable tenants" and told the real estate company that if it could not locate desirable tenants she did not want any tenants at all. The neighborhood in which petitioner's house was located was deteriorating and there were many vacant houses boarded up. Petitioner wanted to rent to working people rather than to mothers and children who were receiving public assistance, because petitioner's experience had been that such tenants caused a lot of damage. The real estate company showed petitioner's apartment to a number of persons and apparently even accepted deposits from some, but checks of credit references, checks with prior *570 landlords, or other things indicated that the prospective tenants did not meet petitioner's standards for "desirable tenants" or "decent tenants." The record does not show when the real estate company last showed the apartment. The apartment remained vacant for over five years, with a "for rent" sign in the window for the entire period. In January 1980 petitioner found tenants she considered suitable and rented the apartment to them. On December 27, 1976, certain unknown vandals broke into petitioner's basement and garage. The only item that was stolen was her son's 26-inch 10-speed bicycle. However, the windows and door to the basement were damanged, and the walls and door of the garage were vandalized. The bicycle was never recovered, and none of the loss or damage was covered by insurance. On her tax return for 1976, petitioner deducted a casualty (and theft) loss of $ 1,550, less the $ 100 statutory deduction. Petitioner also deducted a rental loss of $ 1,959, composed of $ 500 for depreciation and $ 1,459 for expenses and repairs. The expenses and repairs were listed as follows: Heating
$ 800
Lights
180
Water
50
Fire insurance
79
Repairs (Doors, Windows,
Pipes, Furnace)
350
*571 The depreciation was based on a 30-year useful life. The $ 800 item for heating covered heating the entire house. On audit, respondent disallowed the entire rental loss deduction and allowed $ 675 of the casualty (theft) loss as follows: Bicycle
$ 100
Damages to door and
window
75
Garage
500
After the $ 100 statutory deduction respondent allowed a net casualty (theft) loss deduction of $ 575. OPINION Deductions are a matter of legislative grace and a taxpayer must establish that she is entitled to the deductions claimed. Welch v. Helvering, 290 U.S. 111, 115 (1933); Deputy v. DuPont, 308 U.S. 488, 493 (1940). Petitioner has not sustained her burden of proof, and there is no basis on which the Court can increase the amount already allowed by respondent for the casualty (theft) loss deduction. If anything, the evidence presented by petitioner suggests that the same expenses may have been claimed twice, once as part of the casualty loss and again as part of the rental loss. Petitioner submitted two receipts that she testified *572 were connected with the casualty, certain repairs to pipes that had frozen and burst allegedly as a result of the break-in damage to the door and windows of the basement. One receipt was dated January 8, 1976, which date was over 11 months before the break-in occurred. Petitioner testified at various times that the correct date for that receipt was 1975, 1976, and 1977. The other receipt is dated December 24, 1976, which was at least three days before the breakin occurred. Petitioner could not explain these inconsistencies, but then suggested that the receipts related to expenses for the house, not to the casualty loss. At an earlier point in her testimony when she was claiming the 1975 date she seemed to suggest that the repairs to the sink and pipes, mentioned in the receipts, related to repairs to the downstairs apartment after the last tenants moved out in September 1974. This testimony was changed when it was pointed out that she had already testified that any repairs to that apartment were completed and the apartment was ready for occupancy by October 1974. Petitioner's shifting stories and changing explanations give the Court little confidence in her credibility. In any *573 event, there is nothing in these receipts that would sustain a casualty loss deduction in excess of the $ 675 already allowed. Respondent disallowed the rental expense deduction in its entirety on the ground that petitioner was not in fact carrying on a rental property trade or business within the meaning of section 162(a), [2] or that the apartment was not property held for the production of income within the meaning of section 212, [3] in that petitioner did not have the requisite profit-making motive. Jasionowski v. Commissioner, 66 T.C. 312 (1976). *574 Petitioner insists that she did have a profit motive but that the conditions in her deteriorating, run-down neighborhood made it impossible for her to find tenants. In her petition, she complained that it is "wrong to penalize me because I am unable to find a desirable tenant." The Court is most sympathetic to homeowners such as petitioner who are struggling against the urban blight afflicting too many of the nation's inner city areas. Petitioner insisted on renting only to what she considered to be "decent tenants" or "desirable tenants" and she frankly admitted that "* * * unless I could get a desirable tenant, I just didn't want any tenants at all." However, there comes a point when a rental property can no longer be considered as being held out for rent or being held for profit-making purposes. That point had long since been reached and passed by the time the apartment had been vacant for over five years. It is hard to say exactly when the point was reached, but the Court is reasonably satisfied that it must have been reached by 1976, the year involved in this case. However, even if the Court could find that petitioner was still in the rental business in 1976, there is no *575 evidence in the record to support a rental loss deduction in the amount claimed or in any other amount. There is no evidence substantiating any of the figures listed on the rental expense schedule, and many of the items are clearly not allowable. For example, the depreciation figure obviously covers the entire house (30-year useful life x $ 500 per year = $ 15,000), without any allocation between business use and personal use, and possibly without any allocation of the original purchase price between the land which is not depreciable and the house which may be. By 1976, petitioner had owned the house for over 22 years. It seems quite likely that petitioner had already deducted in prior years far more depreciation than would properly be allowable for the rental unit. Petitioner admitted that the heating figure was for heating the entire house, not just the portion allocable to the downstairs apartment. Moreover, since there was no one living in that apartment, the lights and water must have been for petitioner's own personal use. And the repairs to the doors, windows and pipes may well have been covered by the amounts already allowed for the casualty loss connected with the break-in. *576 [4] Therefore, the Court must sustain respondent's dis-allowance of the rental loss deduction. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and as in effect during the taxable year here involved, unless otherwise stated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General↩. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- 3. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income, or * * *↩
4. Also, if the January 8, 1976 receipt was really for January 1977, as petitioner insisted at one point, then these expenses could not be deducted in 1976 in any event.↩